**UNITED STATES DISTRICT COURT FOR THE**

**DISTRICT OF PUERTO RICO**

ELAINE L. CHAO, Secretary of Labor,
United States Department of Labor
 Plaintiff

v.                                                                                 Civ. No. 03-2045 (HL)

SINDICATO DE EQUIPO PESADO
DE PUERTO RICO
 Defendant

**OPINION AND ORDER**

Before the Court is plaintiff's motion for summary judgment and defendant's opposition.  (Dkts. 21 and 26).  Plaintiff, the Secretary of Labor for the Department of Labor ("Government"), alleges that defendant, Sindicato de Equipo Pesado ("union") violated Title IV of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA") by refusing one of its lifelong members, Jose Catala ("Catala") to run for union President.  In response, defendant argues  that Catala was not eligible to run for office because he ceased being a union member when he began working for an employer that is not a signatory to a collective bargaining agreement without paying his union dues.

**UNCONTESTED FACTS**

The following uncontested facts are based on Defendant's Admissions to the Secretary's First Set of Requests for Admissions. (Dkt. 19, Attachment 2).  Complainant Catala was a member of the union for at least thirty years and a member in good standing

Civ. No. 03-2045 (HL)                                   2

for a period of ten uninterrupted years. As a result, upon retirement, and in accordance with the union's constitution and by-laws, Catala was granted a lifelong membership to the union in August of 2001. Lifelong members are entitled to vote and run for office in union elections and are not required to pay dues.

On November 24, 2002, defendant held a meeting to determine the nominees for the next election scheduled for January 26, 2003. At the meeting, Catala nominated himself as candidate for the office of President, currently held by Jesus Agosto ("Agosto"). In response, Agosto insisted that Catala run for the position as a member of a slate of candidates and also requested that he present a good conduct certificate. However, Catala was unable to present a good conduct certificate at that time and no slate was possible because none of the other positions were being contested. Agosto also mentioned that Catala was currently employed by a company that was not a signatory to the union's collective bargaining agreement. In the end, Catala's nomination was neither accepted nor rejected. Instead, Agosto accepted a motion to not hold any elections in 2003. As a result, the members of union at the nomination meeting passed the motion and the incumbent officers were deemed re-elected for another three-year term.

On January 31, 2003, Catala sent a letter to Agoso protesting the disqualification of his candidacy. Defendant's constitution, however, does not contain any election protest procedures and Catala's letter went unanswered.

**DISCUSSION**

I.      *Summary Judgment Standard*

Civ. No. 03-2045 (HL)                          3

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining if a material fact is "genuine" the Court does not weigh the facts but, instead, ascertains whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*; *see also Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995).

Once a party moves for summary judgment, it bears the initial burden. Specifically, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Crawford-El v. Britton*, 523 U.S. 574, 600 n. 22 (1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. Fed. R. Civ. P. 56(e); *Libertad v. Welch*, 53 F.3d 428, 435 (1st Cir. 1995). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Furthermore, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Civ. No. 03-2045 (HL)                                    4

*II.     The Labor Management Reporting and Disclosure Act*

The LMRDA, commonly known as the Landrum-Griffin Act, was passed by

Congress in 1959 in order "to ensure that unions would be democratically governed, and

responsive to the will of the union membership as expressed in open periodic elections."

*Harrington v. Chao,* 280 F.3d 50, 52 (1st Circ. 2002).  *See also Navarro v. Gannon*, 385

F.2d 512, 518 (2d Cir. 1967) ("The LMRDA was enacted with the clear purpose of assuring

the full and active participation by the rank and file in the affairs of the union").  As the

Supreme Court has noted, "[i]t needs no argument to demonstrate the importance of free

and democratic union elections." *Finnegan v. Leu*, 456 U.S. 431, 441 (1982)).

Accordingly, Title IV of the LMRDA sets out minimum standards for the election of union

officials.  Specifically, it requires every labor organization to "elect its officers not less than

once every three years by secret ballot among the members."  29 U.S. § 481(d).

*III.    Catala's lifelong membership*

Defendant concedes that the only contested issue in this case is whether Catala was a

lifelong member at the time of the nomination meeting.  Specifically, the union argues that

Catala lost his lifelong membership in August 2002 when he began working for a company

that was not a signatory to the union's collective bargaining agreement without paying his

dues. Under Article XIV of the union's constitution, a union member who has been in good

standing for "ten uninterrupted years, qualifies to be a lifelong member of the organization

as soon as he retires or is incapacitated."  Moreover, "[t]o preserve his condition as a

lifelong member, the worker must attend the union's membership meetings and excuse

Civ. No. 03-2045 (HL)                              5

himself ahead of time when he cannot attend.  If he is absent in three consecutive meeting without an excuse, he will be dropped from membership." (Dkt. 19, Attachment 4).  This specific section of the union's constitution addresses exclusively the issue of lifelong members.  Nowhere in this provision does it state  that such members will lose their status if they begin working for an organization outside the collective bargaining agreement.

Defendant contends that the Court should instead focus its inquiry on Article VI, Section X of the constitution which states:

> Every member that begins working outside of the union's collective bargaining agreement [and stops paying his dues]...will be dropped from membership after 90 days.  To be reincorporated into the membership, he must satisfy the specific requirement in Section 2 of Article IV, and pay what is owed in weekly dues or affiliate again, except for the lifelong members. (Dkt. 19, Attachment 4).

While this provision does require union members to pay dues once they start working for an employer outside the collective bargaining agreement, the provision clearly carves out an exception for lifelong members.  Moreover, there is no credible evidence that the provision was ever consistently applied to Catala since he was never "dropped from membership after 90 days" of commencing work with his new employer in August 2002.

The only piece of evidence that defendant provides in support of its contention is a sworn affidavit from union President Agosto which states that Catala ceased to be a lifelong member "when he began working for an employer not signatory to any collective bargaining agreement with Sindacto and when he didn't pay any union dues directly to Sindicato.  Catala is not retired nor incapacitated since at the present time he is working."

Civ. No. 03-2045 (HL)                              6

(Dkt. 28, Exh. 1).  First, no where in the union's constitution does it state that lifelong members must be retired or incapacitated.  Second, and more importantly, Agosto's affidavit is self-serving and conclusory, and thus insufficient to defeat summary judgment. *See Albiero v. City of Kankakee*, 246 F.3d 927 (7th Cir. 2001) ("self-serving affidavits are insufficient to defeat summary judgment").

The Court is well aware that the First Circuit has aligned itself "squarely with those courts that have said judges should refrain from second-guessing labor organizations in respect to plausible interpretations of union constitutions."  Local No. 48, *United Brotherhood of Carpenters v. United Brothers of Carpenters*, 920 F.2d 1047, 1052 (1st Cir. 1990).  In this case, however, the Court does not believe that the interpretation provided by defendant is either "patently reasonable" or at all "plausible."  The constitution clearly carves out an exception for lifelong members and does not specify that retirement or incapacity is a requirement of maintaining membership status.  Rather, it makes it very clear that attendance of union meetings is what preserves one's lifelong membership status. More importantly, the Court must remain mindful of the goals of the LMRDA which include "protect[ing] the rights of rank-and-file members to participate fully in the operation of their union through processes of democratic self-government, and, through the election process, to keep the union leadership responsive to the membership." *Wirtz v. Hotel Employees*, 391 U.S. 492, 497 (1968).  Hence, for these reasons, the Court must grant plaintiffs motion for summary judgment and declare the union's election for the office of President null and void.

Civ. No. 03-2045 (HL)                              7

## CONCLUSION

In accordance with the foregoing, plaintiff's motion for summary judgment is **granted**. The 2003 election for the office of President is hereby declared null and void. The Court orders defendant to conduct a new election for the office of President under the supervision of the United States Department of Labor. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 13, 2004

**S/ HECTOR M. LAFFITTE**

**U.S. District Judge**